IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

SERHIY KHOLIN and NADIIA KHOLINA,   )
                                         )
            Plaintiffs,              )   TC-MD 190246N
                                         )
        v.                       )
                                         )
DEPARTMENT OF REVENUE,         )
State of Oregon,                     )
                                         )
                                         )
            Defendant.       )   **DECISION**

Plaintiffs appealed Defendant's tax assessments for the 2015, 2016, and 2017 tax years. Defendant moved to dismiss Plaintiffs' 2015 tax year appeal as untimely and, in an Order entered August 22, 2019, the court granted Defendant's motion and dismissed the 2015 tax year. That Order is hereby incorporated into this Decision. A telephone trial was held September 24, 2020, concerning the 2016 and 2017 tax years. Plaintiffs appeared on their own behalf. Serhiy Kholin (Kholin) testified on behalf of Plaintiffs. Brianna Shelden and Kelly Young appeared on behalf of Defendant. Plaintiffs' Exhibit A and Defendant's Exhibits A to J were received without objection.

## I. STATEMENT OF FACTS

Plaintiffs filed Schedules C for the following businesses in 2016: Ann Kay LLC and Artemida Line LLC. (*See* Def's Ex A.) They also operated a childcare business in 2016 but did not file a Schedule C. (*See* Def's Ex C at 10-11.) In 2017, Plaintiffs filed Schedules C for each of those businesses and for two more businesses: Mini Me and Mama LLC and a notary business.[1] (*See* Def's Ex B.) Defendant adjusted Plaintiffs' returns and revised some of those

---

[1] Defendant did not make any adjustments to the Schedule C for the notary business. (Def's Ex J at 1.)

adjustments during this appeal based on additional information supplied by Plaintiffs. The adjustments and revisions are as follows. It appears that the parties agree with respect to all the adjustments made, except those to Artemida Line LLC, which were the subject of trial.

A.      *Ann Kay LLC*

For the 2016 tax year, Plaintiffs originally claimed income of $359 and expenses of $30,000. (Def's Ex A at 3.) Through the audit and appeal, Defendant allowed a beginning inventory of $28,729 and purchases of $21,711 for an ending inventory of $50,081. (Def's Ex I at 2.) Defendant further allowed expenses totaling $5,170 for a net loss of $5,170. (*Id.*) For the 2017 tax year, Plaintiffs claimed gross receipts of $13,505; purchases of $37,354; and expenses of $2,484. (Def's Ex B at 7-8.) Defendant did not adjust gross receipts. (Def's Ex J at 5.) It allowed a beginning inventory of $50,081; purchases of $30,462; and an ending inventory of $67,038. (*Id.*) Defendant allowed expenses of $4,662 for a net loss of $4,662. (*Id.*)

B.      *Childcare Business*

For the 2016 tax year, Plaintiffs did not file a Schedule C for this business. (*See* Def's Ex A.) During audit, Plaintiffs produced documents showing that they received payments totaling $7,922 and they reported expenses of $3,499. (Def's Ex C at 10-11.) Defendant accepted the income and allowed expenses of $7,922 for a net profit of $0. (Def's Ex I at 3.) For the 2017 tax year, Plaintiffs originally reported income of $5,584 and expenses of $6,216. (Def's Ex B at 3.) Defendant allowed income and expenses of $8,163 for a net profit of $0. (Def's Ex J at 2.)

C.      *Mini Me and Mama LLC*

For the 2017 tax year, Plaintiffs reported no income; purchases totaling $1,914; and expenses totaling $4,502. (Def's Ex B at 9.) Defendant allowed purchases totaling $2,657 for an ending inventory of $2,657, and startup expenses totaling $2,364. (Def's Ex J at 3.)

D.      *Artemida Line LLC*

Kholin operated a trucking business, Artemida Line, during the tax years at issue.[2] He drove a refrigerator truck that could move dry food and other kinds of products. Kholin did not own the truck, but rather had a contract with "Jason Logistics LLC" (Jason), which owned the truck and trailer. Jason paid for "full load" expenses and Kholin paid for "partial load" expenses. Kholin testified that he had a letter from Jason concerning who pays for which expenses, but he did not include it in his exhibits. When not in use, the truck was parked at a lot in Vancouver, Washington, where Kholin's trips typically started. However, other drivers sometimes used the truck, in which case it might be parked in a different location. Kholin was required by Department of Transportation (DOT) regulations to log when he was driving, on duty (but not driving), off duty, or sleeping and he submitted those logs to the DOT. (*See* Ptfs' Ex A at 88.)

For the 2016 tax year, Plaintiffs claimed gross receipts of $86,210 and expenses of $73,895. (Def's Ex A at 5.) Defendant did not adjust gross receipts but reduced allowable expenses to $14,081. (Def's Ex I at 1.) Defendant allowed $2,212 of $12,465 in claimed fuel expenses and none of the $8,279 in claimed warehouse expenses. (*Id.*) Defendant allowed $1,342 in oil changes for the truck that had not previously been claimed. (*Id.*) For the 2017 tax year, Plaintiffs claimed gross receipts of $43,799 and expenses of $49,118. (Def's Ex B at 5.) Defendant did not adjust gross receipts but reduced allowable expenses to $10,167. (Def's Ex J at 4.) Defendant allowed $3,044 of the $12,736 claimed fuel expenses and none of the $6,169 claimed "lumper warehouse" expenses. (Def's Ex B at 12; Ex J at 4.)

Kholin presented exhibits and gave testimony concerning his fuel expenses, warehouse fees, and the use of his Honda Odyssey in 2016. He testified that his 2017 expenses were similar

_____

[2] Kholin was the only witness. Unless otherwise noted, all fact statements are based on his testimony.

to 2016 but Plaintiffs failed to produce any exhibits because they ran out of time.

1.      *Fuel expenses*

Kholin testified that he often paid cash and presented receipts for fuel purchases. (*See* Ptfs' Ex A at 1-43.) The receipts identify the trucking company as Jason; many reflect cash payments, though some were made by credit card. (*See id.*) Kholin testified that he had to identify the trucking line to the gas station, but the fuel was not charged to the trucking line. He identified two credit cards in his name that were used to purchase fuel. (*See id.* at 13, 18.)

Defendant disallowed all of the cash payments for fuel, explaining that "[m]ultiple receipts included cash back from the purchase of fuel using the Jason Logistics Com-data card. While there were eight transactions that showed as paid by the Plaintiff's card * * * there was almost as much as cash back from the use of the Com-data card." (Def's Recommendations, Mar 30, 2020; *see also* Def's Exs G, H.[3]) Defendant allowed $2,212 in fuel payments based on those made by card or confirmed on a bank statement. (Def's Pre-Trial Memo.)

2.      *Warehouse expenses*

Kholin loaded and unloaded pallets at various warehouses, incurring fees to use the warehouse docks. He paid all warehouse fees in cash because many only accepted cash and received receipts for those payments. (*See* Ptfs' Ex A at 45-86.) Kholin's reported payments for warehouse fees range from $50 to $500, totaling $8,035, paid on dates ranging from April 30, 2016, through December 15, 2016, with five undated receipts. (*Id.*) Defendant disallowed all the warehouse fees, explaining that "there was consistent cash withdrawn when the Jason Logistics Com-data card was used. Plaintiff has not provided proof that these items were not

---

[3] Many fuel receipts from 2016 and 2017 reflect payment by "Comdata Check" with cash back. (*See* Def's Exs G, H.) Kholin testified that Jason owned the "ComData" account.

reimbursed by Jason Logistics." (Def's Recommendations, Mar 30, 2020.) Defendant clarified at trial its view that the cash back from Jason's Comdata card was likely used to pay for fuel and warehouse fees. (*See* Def's Exs G, H (fuel receipts showing cash back).)

3.    *Mileage*

At trial, Plaintiffs raised a new claim for mileage associated with the use of their Honda Odyssey for Kholin's transportation to work sites. (*See* Ptfs' Ex A at 129-130.) When the truck was not parked in Vancouver, Kholina would drive Kholin to the truck's location to begin his trip. For example, Kholin had to drive to Yakima, Washington, on January 7, 2016, to pick up the truck because the prior driver had been unable to finish the trip. (*See id.* at 87-88.) A calendar page from that date includes notes identifying the vehicle, locations, and odometer readings. (*Id.* at 87.) The corresponding DOT log reflects a trip from Yakima to Orlando, Florida. (*Id.* at 88.) Other calendar entries do not match Kholin's DOT logs.[4]

Defendant disallowed expenses associated with the Honda for several reasons: first, because Plaintiffs did not adequately substantiate them and, second, because Plaintiffs may not claim *both* mileage and actual vehicle expenses. (*See* Def's Ex C; Recommendations, Mar 30, 2020.[5]) Upon hearing Kholin's testimony that he "was his own boss" and could quit whenever he wanted, Defendant concluded that Plaintiffs' trips were all personal because Kholin went when and where he wanted to. Defendant reiterated that Plaintiffs had claimed actual expenses (oil and depreciation) and may not now claim mileage. (*See* Def's Ex A at 7-15 (Plaintiffs

---

[4] For example, on January 19, 2016, Plaintiffs reported driving the Honda from Vancouver to Portland, but the DOT log reflects a trip from Ridgefield to Kent, Washington. (Ptfs' Ex A at 89-90.) On February 14, 2016, Plaintiffs reported driving from Portland to LaGrande, Oregon, but the DOT log reflects a trip form Atlanta, Georgia, to Portland. (*Id.* at 91-92.) On February 28, 2016, Plaintiffs reported driving from Portland to the Dalles, Oregon, but the DOT log reflects a trip from St. Petersburg to Portland. (*Id.* at 94-95.)

[5] Defendant allowed oil change expenses $1,342 associated with the truck (Volvo). (Def's Pre-Tr Mem.)

claimed bonus depreciation under IRC section 179 for the Honda in 2016).) Kholin testified that the oil change records are evidence of the Honda mileage. (*See* Ptfs' Ex A at 126-128.)

## II. ANALYSIS

The issue is whether Plaintiffs may deduct as business expenses under IRC section 162 mileage and payments for fuel and warehouse fees for the 2016 and 2017 tax years associated with Kholin's business Artemida Line LLC.

The legislature intended to make Oregon personal income tax law identical in effect to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007.[6] Oregon adopted relevant federal definitions, including those for trade or business expenses under IRC section 162. *See* ORS 316.012. IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC section 262(a) disallows deductions for "personal, living, or family expenses."

Allowable deductions are a "matter of legislative grace" and the burden of proof is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Plaintiffs, as the party seeking affirmative relief, bear the burden of proof by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). This court has statutory authority "to determine the correct amount of [the] deficiency, even if the amount so determined is greater or less than the amount of the

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

assessment determined by the Department of Revenue[.]" ORS 305.575.

A.    *Fuel and Warehouse Expenses*

Plaintiffs maintain that they should be allowed to deduct fuel and warehouse fees paid in cash. Defendant disallowed those expenses because Kholin received cash back on fuel purchases made with checks from Jason's Comdata account and, presumably, Kholin used that cash to pay for fuel and warehouse fees. The court finds that Plaintiffs have failed to meet their burden of proof with respect to the cash payments for fuel and warehouse fees. Plaintiffs presented no independent evidence that Kholin made the cash payments with his own funds or that he was required by contract with Jason to pay for fuel and warehouse fees.

B.    *Mileage*

Plaintiffs presented a new claim for mileage associated with driving their Honda Odyssey to Kholin's truck when it was not parked at the lot in Vancouver. Defendant denied the expenses because Plaintiffs claimed actual vehicle expenses – including oil and depreciation – and because it determined Plaintiffs' trips were personal.[7]

Generally, commuting expenses for traveling between one's home and place of business are considered personal and nondeductible. Treas Reg. 1.262-1(5); *Fausner v. Comm'r*, 413 US 838, 93 S Ct 2820, 37 L Ed 29 996 (1973). Revenue Ruling 99-7 identifies three exceptions when travel between a taxpayer's residence and work location may be deducted. The first exception, which is potentially relevant here, allows a deduction for travel "between the

---

[7] Defendant is correct that Plaintiffs may not claim both mileage and actual expenses. "A taxpayer may use the business standard mileage rate (published in an annual notice) to substantiate the amount of a deduction for an automobile that a taxpayer either owns or leases." Rev Proc 2010-51, § 4.01. The business standard mileage rate is used "in lieu of computing the fixed and variable costs of the automobile allocable to business purposes." *Id.*, § 4.02. The fixed and variable costs covered by the standard mileage rate include "[i]tems such as depreciation or lease payments, maintenance and repairs, tires, gasoline (including all taxes thereon), oil, insurance, and license and registration fees." *Id.* Here, it appears Defendant disallowed all of Plaintiffs' actual expenses associated with use of their Honda Odyssey. (*See* Def's Ex C at 4-6; Ex I at 1; Ex J at 4, 7.) Thus, the court considers the mileage claim.

taxpayer's residence a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works." Rev Rul 99-7 (emphasis in original).

Plaintiffs lived in Portland, Oregon, and the truck was typically parked in a lot in Vancouver, Washington. (Def's Ex A at 1, Ex B at 1.) Thus, it *may* be that Kholin normally lived and worked in the Portland metropolitan area, in which case he could deduct transportation expenses associated with commuting to work locations outside of the Portland metropolitan area.[8] Even so, Plaintiffs' calendar entries frequently do not match Kholin's DOT logs, casting doubt upon the reliability of the calendar and the business purpose of reported trips.

Mileage for a passenger automobile is subject to the strict substantiation requirements of IRC section 274(d) and the accompanying regulations. *See also* IRC § 280F(d)(4)(A)(i) (identifying passenger automobiles as listed property). Under IRC section 274(d), a taxpayer must substantiate a claimed expense with adequate records or sufficient evidence corroborating the taxpayer's statement establishing the amount, time, place, and business purpose of the expense. Treas Reg § 1.274-T(b)(2). "[A] taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record, * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." Treas Reg § 1.274-T(c)(2)(i). The court finds that Plaintiffs have not adequately substantiated the business use of their Honda Odyssey.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiffs have failed to prove that they are entitled to any deduction under IRC section 162(a) beyond what Defendant has allowed.

---

[8] On the other hand, it may be that Kholin did not normally work in any one location given his line of work and the nationwide locations where he drove the truck (Oregon, Washington, Georgia, Florida, North Carolina, South Carolina, Tennessee). (*See* Ptfs' Ex A at 86-123.)

Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2015 tax year is dismissed.

IT IS FURTHER DECIDED that, for the 2016 tax year, Plaintiffs are allowed Schedule C income of $86,210 and expenses of $14,081 for Artemida Line LLC; Schedule C income of $0 and expenses of $5,170 for Ann Kay LLC; and Schedule C income of $7,922 and expenses of $7,922 for the childcare business.

IT IS FURTHER DECIDED that, for the 2017 tax year, Plaintiffs are allowed Schedule C income of $43,799 and expenses of $10,167 for Artemida Line LLC; Schedule C income of $0 and expenses of $4,622 for Ann Kay LLC; Schedule C income of $8,163 and expenses of $8,163 for the childcare business; and Schedule C income of $0 and $2,364 in startup expenses for Mini Me and Mama LLC.[9]

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 11, 2021.*

---

[9] Plaintiffs' Schedule C notary business was unchanged from their return.